**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHANE LAFFERTY,            )
                                    )
        Petitioner,             )         Civil Action No. 21-cv-122
                                    )
          v.                 )         Magistrate Judge Maureen P. Kelly
                                    )
PENNSYLVANIA BOARD OF         )         Re. ECF No. 20
PROBATION AND PAROLE;          )
TED JOHNSON *Chairman*; SHAWN     )
ADAMCZYK *Parole Agent*; *and*       )
STEVEN A. ZAPPALA *District Attorney of*   )
*Allegheny County, PA*,            )
                                    )
        Respondents.        )

**<u>MEMORANDUM OPINION</u>**

Shane Lafferty ("Petitioner") seeks federal habeas relief from his state court conviction of two counts of possession of child pornography, in violation of 18 Pa. C.S.A. § 6312(d). ECF No. 20 at 2. <u>See also</u> Docket, <u>Com. v. Lafferty</u>, No. CP-02-CR-4063-2014 (C.C.P. Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumb er=CP-02-CR-0004063-2014&dnh=pifzDb5i9TN01WcDfJ25Kw%3D%3D (last visited Apr. 1, 2024)).

On February 20, 2015, Petitioner was convicted after a jury trial in the Court of Common Pleas of Allegheny County, at which he chose not to testify. Trial Tr. dated Feb. 17-20, 2015, at 250 and 557. On February 24, 2015, he was sentenced to serve a term of imprisonment of two to four years, followed by two consecutive three-year terms of probation. ECF No. 15-1 at 37. Petitioner also was sentenced to a lifetime requirement to register as a sex offender. <u>Id.</u>

Petitioner initiated this federal habeas action by filing a Petition for a Writ of Habeas Corpus (the "Initial Petition"), which was received on January 28, 2021. ECF No. 1. Petitioner

submitted his operative Amended Petition for a Writ of Habeas Corpus (the "Amended Petition") on July 25, 2021. ECF No. 20. Full consent of the parties to proceed before a United States Magistrate Judge was obtained on May 9, 2021. ECF Nos. 5 and 8.

Each of Petitioner's grounds for relief in the Amended Petition sounds in allegations of ineffective assistance of counsel. But none of these claims was exhausted in the state courts, and Petitioner is precluded from further developing their factual bases here. As addressed below, because Petitioner cannot establish ineffective assistance of counsel on the closed record before this Court, the Amended Petition will be denied. A certificate of appealability also will be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Pennsylvania Superior Court summarized much of the relevant factual background and procedural history from Petitioner's underlying criminal case in its Memorandum ruling on Petitioner's direct appeal.

> An undercover investigation into the possession and distribution of child pornography by Pennsylvania State Police's Southwest Computer Crime Task Force led the police to obtain a warrant to search an address on Fallowfield Avenue in Pittsburgh. Police executed the warrant on October 29, 2013. When no one answered the door after they knocked loudly for over a minute, police kicked in the door. They found Appellant exiting an upstairs bedroom. Appellant's laptop computer was on the bed with a file sharing program running. No other person was in the room at that time.
>
> A forensic investigation of the laptop computer confirmed that it contained child pornography. As the trial court noted:
>
> Appellant conceded that his computer contained child pornography but alleged that others had access to the computer and may have downloaded child pornography without his consent or knowledge. The parties also stipulated that between April 5, 2013, and June 27, 2013, Appellant did not have access to his computer.
>
> [At] the time Appellant's laptop was seized, he participated in a tape-recorded interview by the police in which he denied responsibility for the child pornography on the laptop[.]

Appellant was arrested in March 2014:

Officer Dennis Baker of the City of Pittsburgh Police Department testified that on March 9, 2014 he was dispatched to a residence on Fallowfield Avenue to execute an arrest warrant for Appellant. Officer Baker knocked on the door and a man answered and identified himself as Brian Wells. The officer identified Appellant in court as the individual who said he was Brian Wells. "Brian Wells" told the officer that Appellant resided in the home but was not present at that time. Officer Baker asked Appellant to provide any identification, such as a driver's license or a piece of mail with his name on it, but Appellant could not produce these items. Appellant was asked his date of birth by three different officers and Appellant gave three different responses. Officer Baker arrested him, at which point Appellant said, "I'm Shane Lafferty. I'm the one you're looking for."

***

The trial court described Appellant's trial as follows:

The Commonwealth presented evidence to explain to the jury the procedure the State Police used to determine the presence of child pornography on the laptop computer owned by Appellant. Corporal [John] Roche testified that he created a PowerPoint presentation to explain his forensic examination of Appellant's computer. The PowerPoint was used as demonstrative evidence but was never offered or admitted into evidence.

Corporal Roche examined Appellant's computer and found approximately forty-three downloads with Appellant's name associated with it. Corporal Roche listed the downloads chronologically and testified that the activity of creating downloaded files ended on March 10, 2013 and resumed on June 29, 2013.[1] The Corporal's search results also included a handful of downloads associated with either Wendy Cross or Amy Cross, other residents of Appellant's home. None of the downloads associated with Wendy or Amy Cross contained child pornography.

Corporal Roche gave as an example of the computer's activity the files indexed on Appellant's computer on July 9, 2013. Corporal Roche testified that on July 9, 2013, at 4:50 p.m., a text file was

---

[1] These dates are relevant because, at trial, the parties made two separate stipulations that Petitioner had no access to his computer from March 26 to June 27, 2013.  Trial Tr. dated Feb. 17-20, 2015, at 110 and 226.

created on Appellant's computer called "Shane's food stamp app.number.text." File sharing of child pornography occurred on the same date at 4:37 p.m. and at 5:05 p.m. Corporal Roche concluded that the same person who created the document "Shane's food stamp app.number.text" was at the same time sharing child pornography through BitTorrent.[2] ...

Appellant called several witnesses in an effort to cast blame on David Cross[, Amy Cross' brother,] for the child pornography on Appellant's computer. Thomas Betker testified that he lived at [Appellant's address] in the summer of 2013 with his girlfriend Jordan Thomas, Appellant, Amy Cross (Appellant's ex-girlfriend), and her mother Wendy Cross, and said that during that summer David Cross periodically resided there as well. Betker testified that he never saw Appellant access child pornography, that other individuals had access to Appellant's laptop computer during the relevant time frame, and that one of those individuals was David Cross. David would take the computer to a more private area of the home when he used it and at one point indicated a desire to destroy the computer. Jordan Thomas and a neighbor, Bridget Aber, testified similarly. In addition, Aber testified that David Cross confided to her that he had a sexual predilection toward children.

---

[2] One of the factual statements made by the Superior Court in its opinion affirming the denial of post-conviction collateral relief was that the "Shane's food stamp app.number.text" computer file – which it called the "Shane's Food Stamp" file – contained child pornography. Com. v. Lafferty, No. 1280 WDA 2018, 2019 WL 4862186, at *5 (Pa. Super. Ct. Oct. 2, 2019). As Petitioner notes in his Traverse, however, this is not supported by the evidence presented at trial. ECF No. 24 at 18. Instead, as the state trial court noted in its opinion, the "Shane's Food Stamp" file was presented only for the proposition that it was created at about the same time that Petitioner's computer was sharing child pornography. ECF No. 15-1 at 83. See also Trial Tr. dated Feb. 17-20 at 184-86. There is no evidence on the record before this Court as to the specific content of that particular file – including whether or not it contained child pornography.

Petitioner in his Traverse takes further issue with another factual conclusion made by the state trial and appellate courts – that Petitioner's name was "associated with the downloads [of child pornography.]" ECF No. 24 at 16. See also ECF No. 15-1 at 88. See also Lafferty, 2019 WL 4862186, at *7 (same). But "associated" is a broad term. The trial court opinion, from which the Superior Court reproduced its recitation of facts, recognized that Corporal Roche testified that the "Shane's food stamp" file was created at roughly the same time that Petitioner's computer was sharing child pornography – i.e., that this file was *temporally* associated with the sharing of child pornography on Petitioner's computer. ECF No. 15-1 at 83. In light of the evidence presented during trial, this appears to be the proper interpretation of "associated" as it was used in this passage.

Amy Cross, David's sister, gave testimony that mirrored that of Betker, Thomas and Aber, but added that she had observed David Cross looking at child pornography when he was fourteen years old. Amy Cross testified that David Cross has prescription medication for a medical condition but he told her that he doesn't like to take it because it negatively affects his ability to control sexual urges he has towards children.

Nathaniel Wells, a high school friend of David Cross, testified that he observed David Cross looking at child pornography twelve years ago when Cross would have been seventeen years old. Wells further testified that he and Cross argued on Facebook over what Wells referred to as Cross' use of scripture to justify Cross' pedophilia.

David Cross testified on rebuttal under a grant of immunity. He denied using Appellant's computer to access child pornography. He denied having any conversation with Aber regarding an interest in having sex with young girls. He denied having been caught looking at child pornography by Wells twelve years ago. He stated that he was not at the Fallowfield address on the relevant dates and at the relevant times: July 3, 2013, at 6:00 a.m., on July 8, 2013 at 3:00 a.m., or on July 9, 2013 at 12:35 p.m. Further, he stated that he resided at the Fallowfield address in 2012 but had moved out by Christmas 2012 and was not residing there during the summer of 2013.

Amy Cross was called as a surrebuttal witness. She testified that David Cross once explained to her that a person interested in child pornography can use a "Pedobear" which is an otherwise innocuous image such as the cartoon pony from "My Little Pony" to express that person's pedophilic predilections.

*** 

One of the issues in this appeal concerns the following events that occurred during jury deliberations. In the course of the deliberations, the jury twice asked to hear the tape of Appellant's interview by the police on the day the laptop was seized. That tape was played for the jury by one of the Commonwealth's witnesses, Corporal Gerhard Goodyear, a State Police officer who had testified during the trial as an expert on computer forensics and peer-to-peer file sharing investigations[.] The trial court recounted these events as follows:

Corporal Goodyear entered the jury room on two separate occasions to play an audio file of the police interview with Appellant that was on the Commonwealth's laptop. Counsel was informed that Corporal Goodyear was going to play the audio for the jury but counsel

mistakenly presumed a technician from the Office of the District Attorney, and not the Trooper who had testified, would be the individual who entered the jury room.[7]

> [7] [The trial c]ourt's practice at the time was that, when evidence contained on a Commonwealth laptop was requested by a jury, with the consent of counsel a technician from the Office of the District Attorney would enter the jury room with the tipstaff to operate the laptop.

After learning that the Trooper had entered the jury room to play the audio file requested by the jury, Appellant's counsel placed an objection o[n] the record. Counsel for Appellant was given an opportunity to develop a record by calling Corporal Goodyear and th[e trial c]ourt's tipstaff, George Nichols, to explain the circumstances of how a Commonwealth witness ended up in the jury room. Nichols testified that on the first occasion, Corporal Goodyear entered the jury room and played the audio file for the jury without Nichols in the room. The second time the jury asked to hear the interview, Nichols testified that the Corporal played the audio file for the jury in his presence. Nichols testified that he did not hear the jury ask the Trooper any questions.

Corporal Goodyear testified that when he was in the jury room the first time to play the audio file, the jury asked if they could play the recording without the Corporal being present. He replied that either he or George had to be present because the thumb drive that contained the interview also contained other items which were not introduced into evidence. The jury asked if they could have a transcript of the interview and the Corporal replied that no transcript was available. The Corporal testified that no other discussions occurred while he was in the jury room.

***

When it was revealed that Corporal Goodyear had spoken to the jurors, Appellant's counsel objected: "I object to that, Your Honor. He's a Commonwealth witness. All the communication with the jurors should be from the Court or George." [] Counsel continued that he was under the impression that the tape would be played by someone who was not a Commonwealth witness and then added: "I don't want a mistrial. I just don't want it to happen anymore." [] The trial court then specifically directed Appellant's counsel "to determine whether or not he would request a mistrial." [] After asking further questions of Corporal Goodyear and the tipstaff, Appellant's counsel stated, "[A]t this point I would like to state it

was a good faith mistake. I think we all interpreted him saying he was going to run them up there as he was going to have them run up there or have the interview played." []. Counsel asked for an opportunity to consult with his client and then reported: "Your Honor, I've spoke with Mr. Lafferty. We want to continue with the deliberations. We're not going to ask for a mistrial at this time." []

On February 20, 2015, the jury convicted Appellant [of possessing child pornography, and acquitted him of all other charges].[3]

Com. v. Lafferty, No. 573 WDA 2015, 2017 WL 4280658, at *1-3 (Pa. Super. Ct. Sept. 27, 2017) (internal citations and footnote omitted; footnote 7 in the block quote as in the original; additional footnotes added; bracketed text in last paragraph added). See also ECF No. 15 at 82-85.

The trial court provided additional facts in its Rule 1925 Opinion on direct appeal that were not included in the Superior Court's ruling, but nevertheless are relevant to the instant federal habeas matter.[4]

Corporal Gerhard Goodyear of the Pennsylvania State Police Southwest Computer Crime Task Force testified that his duties include undercover investigations into the possession and distribution of child pornography and forensic examinations of any kind of electronic device that can contain data. (Transcript of Jury Trial 2/17-20/15, hereinafter TT 54-55) He testified that he has received training in BitTorrent/ eMule and various other file sharing networks, and has personally initiated between fifty and seventy-five undercover investigations. (TT 55) BitTorrent is a network that the State Police monitor for the distribution of child pornography. (TT 57) The parties stipulated that Corporal Goodyear could testify as an expert in computer forensics and peer-to-peer file sharing investigations. (TT 71)

Appellant conceded that his computer contained child pornography but alleged that others had access to the computer and may have downloaded child pornography without his consent or knowledge.

---

[3] The additional charges of which Petitioner was acquitted at trial were two counts of sexual abuse of children - photographing, in violation of 18 Pa. C.S.A. § 6312(c), and one count of criminal use of a communication facility, in violation of 18 Pa. C.S.A. § 7512. ECF No. 15-1 at 16-19.

[4] In its Rule 1925 Opinion in the PCRA proceedings, the PCRA trial court explicitly adopted its own factual recitation from its Rule 1925 Opinion on direct appeal. ECF No. 15-1 at 400.

> The parties also stipulated that between April 5, 2013, and June 27, 2013, Appellant did not have access to his computer. (TT 223)
>
> Corporal John Roche testified that his investigation led him to obtain a warrant to search 1331 Fallowfield Avenue. (TT 154) On October 29, 2013, he and a number of other officers executed the warrant. (TT 155) After knocking loudly for over a minute, police kicked in the door. (TT 158) Corporal Roche encountered Appellant exiting an upstairs bedroom. (TT 160) Corporal Roche observed Appellant's laptop computer on the bed, open to a forty-five degree angle with a file sharing program running. (TT 161) No other person was in the room at that time, and Corporal Roche found no evidence that anyone else stayed in that room. (TT 162)

ECF No. 15-1 at 81-82.

Following his conviction and sentence, Petitioner filed post-sentence motions on March 6, 2015. Id. at 39. These motions were denied without opinion by the trial court on March 10, 2015. Id. at 52. Petitioner timely filed a notice of direct appeal to the Superior Court on April 9, 2015. Id. at 53. Pursuant to the trial court's order dated April 13, 2015, id. at 69, Petitioner filed a statement of errors on September 7, 2016. Id. at 71 and 78. The trial court filed its Rule 1925 Opinion on September 26, 2016. Id. at 79.

Petitioner raised the following issues on direct appeal to the Superior Court.

> I. When the Commonwealth's primary witness, Cpl. Goodyear, **twice** invaded the privacy of the jury room during deliberations, interacted with the jury, distributed evidence, and refused to leave when asked by the jurors, is a new trial warranted?
>
> A. As [Appellant] was denied due process of law.
>
> B. The trial court erred by failing to hold a hearing following the procedure in *Remmer v. U.S.*, 347 U.S. 227 (1954), "to determine the circumstances, the impact on the jury, and whether or not it was prejudicial, with all interested parties permitted to participate."
>
> C. The trial court erred when it did not give curative or cautionary instructions (if that was even possible).

II. Was the evidence insufficient to sustain the verdicts when the primary Commonwealth witnesses testified that there was no evidence that [Appellant] used the lap top computer to share/download files of child pornography on the dates alleged in the criminal information and that they merely assumed he was home at that time?

III. Was the verdict contrary to the weight of the evidence when viewed in its entirety since the evidence was so weak, tenuous and vague?

IV. Did the sentencing court abuse its discretion by imposing a sentence that was inconsistent with the norms underlying the sentencing code and focused almost exclusively on the seriousness of the offenses to the exclusion of other pertinent factors?

Lafferty, 2017 WL 4280658, at *4.  See also ECF No. 15-1 at 110-11.

The Superior Court affirmed Petitioner's conviction on September 27, 2017.  Lafferty, 2017 WL 4280658, at *1.  It is noteworthy that, with respect to Issue I, the Superior Court found the issue to have been waived by trial counsel; however, in a footnote, the Superior Court informed Petitioner that he was not precluded from collaterally attacking his conviction for ineffective assistance of counsel with respect to the same.  Id. at *5 and n.5.  Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.  As a result, his conviction became final on October 27, 2017.  Pa. R.A.P. 1113(a).

On December 7, 2017, Petitioner filed a *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546.[5]  ECF No. 15-1 at 283.  The trial court appointed counsel.  Id. at 293.  Petitioner's counsel filed an amended PCRA petition on June 21, 2018.  Id. at 294.  The prosecution filed its brief in opposition on July 19, 2018.  Id. at 339.

---

[5] The *pro se* PCRA Petition is timestamped December 7, 2017.  ECF No. 15-1 at 283.  However, because Pennsylvania applies the so-called "prisoner mailbox rule" to *pro se* PCRA petitions, see, e.g., Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998), it likely is entitled to an earlier effective filing date.  Be that as it may, the parties agree that the present federal habeas proceeding was timely filed.  As such, the issue of whether the *pro se* PCRA petition is entitled to an earlier effective date of filing is academic.

On July 23, 2018, the PCRA trial court found that the PCRA petition was patently frivolous and without support in the record. <u>Id.</u> at 358.  As such, it gave notice of its intent to dismiss the PCRA petition without a hearing.[6]  <u>Id.</u>  Petitioner filed a Response to the Court's Notice of Intent to Dismiss on August 13, 2018.  <u>Id.</u> at 359.  The PCRA trial court dismissed the PCRA petition on August 14, 2018.  <u>Id.</u> at 373.

Petitioner filed a notice of appeal to the Pennsylvania Superior Court on August 31, 2018. <u>Id.</u> at 374.  Once again, Petitioner was ordered to file a statement of errors, <u>id.</u> at 392, which he did on September 17, 2018.  <u>Id.</u> at 393.  The PCRA trial court issued it Rule 1925 Opinion on December 10, 2018.  <u>Id.</u> at 399.  On April 12, 2019, Petitioner filed his appeal brief.  <u>Id.</u> at 409.

On October 2, 2019, the Superior Court issued a Memorandum opinion addressing three issues and affirming the order of the PCRA trial court denying PCRA relief.

> I. Whether counsel was ineffective for failing to effectively respond to the Commonwealth's lead investigator's entrance into the jury room and interaction with the jury during its private deliberations?
>
> II. Whether counsel was ineffective for failing to request a supplemental instruction that defined the term "possession" for the jury when Appellant's possession of child pornography was a key issue of the case?
>
> III. Whether counsel was ineffective for failing to explain the legal meaning of "possession" to the jury during his closing argument?

---

[6] The lack of hearing at the PCRA level in this case does not implicate the United States Court of Appeals for the Third Circuit's recent decision in <u>Fooks v. Superintendent, Smithfield SCI</u>, No. 21-2097 (3d. Cir. filed Mar. 26, 2024).  In <u>Fooks</u>, the Third Circuit required the district court to hold an evidentiary hearing on an exhausted claim that the PCRA court denied on the merits without an evidentiary hearing, even though it acknowledged that the petitioner was not entitled to relief based on the state court record.  <u>Id.</u>, slip op. at 4-6.  But the instant federal habeas case is distinguishable from <u>Fooks</u> because this case involves claims that were procedurally defaulted in state court.  Thus, while Petitioner raises them for the first time in this court, they are not "his first bite at the apple[.]"  <u>Id.</u>, slip op. at 5.

Com. v. Lafferty, No. 1280 WDA 2018, 2019 WL 4862186, at *1-2 (Pa. Super. Ct. Oct. 2, 2019). See also ECF No. 15-1 at 414-15 (raising differently-worded but substantially identical issues in Petitioner's Statement of the Questions Involved).

Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on October 31, 2019. ECF No. 15-1 at 515. *Allocatur* was denied on March 10, 2020. Id. at 545.

The initial Petition in this federal habeas matter was filed by counsel on January 28, 2021. ECF No. 1. Respondents answered the initial Petition on June 4, 2021. ECF No. 15. Petitioner filed the operative Amended Petition on June 25, 2021. ECF No. 20. Respondents answered the Amended Petition – incorporating by reference elements from their initial Answer – on July 13, 2021. ECF No. 22. Petitioner filed his Traverse on October 7, 2021. ECF No. 24.

The Amended Petition is ripe for consideration.

## II. FEDERAL HABEAS CLAIMS

Each of the grounds for relief asserted in the operative Amended Petition is recited as follows.

Ground 1:     Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was violated because his attorney did not object when the trial court failed to properly instruct the jury as to when Corporal Goodyear was testifying as an expert, and when he was testifying as a lay witness.

ECF No. 20 at 13.

Ground 2:     Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was violated when his trial attorney failed to take sufficient steps to prevent the Commonwealth's expert witness, Corporal Goodyear, from unlawfully intruding into the province of the jury both in his testimony and in his power-point presentations.

Id. at 29.

Ground 3:    Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was violated because of the Cumulative Effect of the Attorney Errors in this Trial.

Id. at 45.  In this claim, Petitioner essentially asks this Court to combine each asserted basis under Grounds 1 and 2 for a prejudice analysis.  Id. at 46.

Of note, Petitioner concedes that each of these grounds is unexhausted and procedurally defaulted.  Id. at 27, 42-43, and 47.  He argues that default should be set aside under the equitable doctrine set forth by the United States Supreme Court in Martinez v. Ryan, 566 U.S. 1 (2012).

## III. PROCEDURAL ISSUES

Before this Court can address the merits of Petitioner's federal habeas claims, it will address whether the Amended Petition fulfills the applicable procedural requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").

### A.  The AEDPA Statute of Limitations

The first consideration in reviewing a federal habeas petition is whether it was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254.  The applicable portion of the statute is as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed within the one-year limitations period, a federal court must undertake a three-part inquiry. First, a court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004)).In the instant case, Respondents concede that the Amended Petition

is timely.  ECF No. 22 at 4.  A review of the record, as set forth above, indicates that that is the case.  Grounds 1, 2, and 3 of the Amended Petition are timely filed.

### B.  Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas relief.  In order to comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

Moreover, a petitioner must present every claim raised in a federal habeas petition to the state trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).  In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition for relief under the PCRA.  Lambert, 387 F.3d at 232-34; see also Rodland v. Sup't of SCI Houtzdale, 837 F. App'x 915, 919 (3d Cir. 2020).

A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure.  28 U.S.C. § 2254(c).  A petitioner bears the burden of establishing that the exhaustion requirement has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).  In the case at issue, it is clear that Petitioner's claims are exhausted at the state court level only in the sense that

there is no state avenue for relief available to him due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

Beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, inter alia, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote the United States' dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying federal habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002).

In the instant case, Petitioner concedes that all of his grounds for relief are procedurally defaulted because they never were presented to the state courts for review. ECF No. 20 at 27, 43, and 47.

The United States Supreme Court has held that where a petitioner has to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same). The United States Supreme Court in Coleman further stated that it recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them." 501 U.S. at 750.

The Supreme Court has defined "cause" to set aside default as "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. Id.

In order to show a fundamental miscarriage of justice, the Supreme Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 321 (quoting Murray, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S at 324. Once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

In this case, Petitioner has adduced no new evidence of his actual innocence, nor do his arguments lead to the conclusion that "it is more likely than not that no reasonable juror" would have convicted him. Indeed, Petitioner does not argue that the miscarriage of justice exception

applies to his claims.[7]  Instead, he relies on the Supreme Court's equitable rule in Martinez to establish cause and prejudice to set aside his procedural default of Grounds 1, 2, and 3.  ECF No. 20 at 27-28, 43, and 47.

### 1. The requirements of Martinez v. Ryan

There is no federal constitutional right to effective assistance of counsel at state post-conviction collateral proceedings.  Shinn v. Ramirez, 596 U.S. 366, 382-83 (2022).  As a general rule, a habeas petitioner is responsible for any errors of counsel during such a proceeding.  Id. at 382-83.  However, in Martinez, the United States Supreme Court created a limited equitable exception to this general rule, where ineffective assistance of post-conviction counsel can establish cause to set aside the default of a "a substantial claim of ineffective assistance at trial[.]" 556 U.S. at 17.  The Martinez exception applies only under specific circumstances where post-conviction counsel is ineffective for failing to raise such a claim on collateral review. As this Court has previously explained:

> The decision of the United States Supreme Court in Martinez v. Ryan created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) explained that Martinez only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law

---

[7] To be sure, Petitioner asserts his innocence.  ECF No. 20 at 2.  But he does not argue that the miscarriage of justice exception applies, nor does he adduce evidence consistent with the Schlup standard.

> requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

Taylor v. Pennsylvania, No. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018).

Additionally, in Shinn, the Supreme Court limited the Martinez exception significantly when it announced that it does not permit a federal court to dispense with the narrow limits on considering new evidence set forth in 28 U.S.C. § 2254(e)(2). Shinn, 596 U.S. at 371.

28 U.S.C. § 2254(e)(2) recites:

> (2) If the applicant **has failed to develop the factual basis of a claim in State court proceedings**, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; **and**
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(emphasis added).

A petitioner is at fault, and thus responsible for failing to develop the record in state court, even if that failure is due to the negligence of his state post-conviction counsel. Shinn, 596 U.S. at 382 (quoting Williams v. Taylor, 529 U.S. 420, 432 (2000)). This is consistent with the general rule that a petitioner bears the responsibility for all state post-conviction attorney errors because there is no constitutional right to counsel in state post-conviction proceedings. Id. at 382-83 (citing Coleman, 501 U.S. at 754 and Davila v. Davis, 582 U.S. 521, 528 (2017)).

Although Martinez recognized an equitable exception to the doctrine of procedural default, the Supreme Court in Shinn concluded that it had no power to redefine when a prisoner "has failed to develop the factual basis of a claim in State court proceedings" under the meaning of the statute. Shinn, 596 U.S. at 381 (quoting 28 U.S.C. § 2254(e)(2)).  Thus, the requirements of Section 2254(e)(2) must be satisfied before a federal court may hold an evidentiary hearing or otherwise consider new evidence on the merits of a defaulted ineffective assistance of trial counsel claim. Id. at 388-89.

Additionally, because a hearing on cause and prejudice under Martinez would serve no purpose if the evidence developed therein could not be considered on the merits of the claim, a federal court may not hold an evidentiary hearing or otherwise consider new evidence to assess cause and prejudice under Martinez unless a petitioner meets the requirements of Section 2254(e)(2).  Id. at 387-89.

In the time since the briefing in the instant federal habeas proceeding has closed, the United States Court of Appeals for the Third Circuit issued its decision in Williams v. Superintendent Mahanoy SCI, 45 F.4th 713 (3d Cir. 2022), which further underscores the strict application of Section 2254(e)(2) to new evidence.  In Williams, the Third Circuit held that a petitioner could not develop the facts to support a claim of ineffective assistance of trial counsel in an evidentiary hearing in federal court where his state post-conviction counsel had failed to develop the factual basis for the claim in state court.  Id. at 720 (citing Shinn, 596 U.S. at 381).  Further, the Third Circuit concluded that, under Shinn, expanding the record through depositions or other discovery under such circumstances was prohibited without satisfying the requirements of Section 2254(e)(2).  Williams, 45 F.4th at 724 (citing Shinn, 596 U.S. at 389).

In short, where a petitioner is at fault for failing to develop the factual basis for his underlying constitutional claim on the merits in state court and cannot satisfy Section 2254(e)(2)'s exceptions, a federal court "must skip hearings altogether and deny habeas relief unless the prisoner prevails on the merits considering only the state court record." Id. at 723-24. If a petitioner under such circumstances cannot succeed on the underlying constitutional claims of ineffective assistance of trial counsel on the closed state court record, "federal courts should deny relief without more." Id. at 724.

Here, the factual bases for each of Grounds 1, 2, and 3 are not newly-discovered. To the contrary, they are apparent from the state court record. Further, none of Grounds 1, 2, and 3 is based on a new rule of constitutional law made retroactive by the United States Supreme Court. Petitioner is at fault for his PCRA counsel's failure to raise these grounds in his PCRA petition, and there is no indication that any of the exceptions set forth in Section 2254(e)(2) apply to this case. Therefore, Petitioner is limited to the state court record to support his claims of ineffective assistance of counsel.

Under Williams, this Court must analyze the factual merits of Petitioner's grounds for federal habeas relief on the closed state court record before considering whether default may be set aside under Martinez. The habeas corpus statute further allows this Court to reach the merits of Petitioner's claims without considering default. 28 U.S.C. § 2254(b)(2). Accordingly, the merits of the Amended Petition are addressed below.

## IV. APPLICATION OF MERITS STANDARD OF REVIEW

Federal courts are permitted to grant habeas relief from the judgment of a state court only when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the state court has reviewed a federal issue presented to them

and disposed of the issue on the merits, and that issue also is raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e). Here, Petitioner's asserted grounds for relief were not presented to the state courts, and thus – to the extent that they are properly before this Court at all – they are not subject to AEDPA deference.

Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome by a petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Lambert, 387 F.3d at 235-236. The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding." Id. at 236 n.19. If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence. See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

## A. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id. Petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687).

The second prong requires a petitioner to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

### 1. Ground 1

At Ground 1, Petitioner alleges that his trial counsel was ineffective for failing to object to a lack of an appropriate jury instruction with respect to Corporal Goodyear's testimony, which included both expert testimony and fact testimony.

> Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was violated because his attorney did not object when the trial court failed to properly instruct the jury as to when Corporal

> Goodyear was testifying as an expert, and when he was testifying as
> a lay witness.

ECF No. 20 at 13.

As stated above, the parties stipulated at trial that Corporal Goodyear was an expert on computer forensics and peer-to-peer file sharing investigations.  Trial Tr. dated Feb. 17-20, 2015, at 71.

The trial court provided a jury instruction prior to Corporal Goodyear's testimony that he would be testifying as an expert in the field of computer forensics.

> THE COURT: Ladies and gentlemen, in criminal cases in most cases, there are essentially two types of witnesses. There is a lay witness, who is a witness who testifies from personal observations as to what they saw or heard happen, and an expert witness, who is somebody who by virtue of their special knowledge, skill or training in a particular field is permitted to go beyond personal observations and to testify to opinions and draw inferences from information. I'll give you a fuller description of an expert witness and how you should weight and consider their testimony when I do give you my final instruction, but for your information at this point in time, that is essentially the difference, and in this case, the attorneys have reached an agreement to stipulation that Corporal Gerhard Goodyear will be testifying as an expert in the field of computer forensics in this case.

Id. at 71-72.

At the close of trial, the trial court provided additional jury instructions regarding Corporal Goodyear's expert testimony as well.

> I mentioned briefly expert testimony.  As a general rule, an expert - - a witness can only testify about what he or she saw or heard.  He may not give an opinion or draw conclusions.  One exception to this rule is the so-called expert witness.  Such a witness is one who by training, education or experience has acquired a special level of skill or knowledge in some art, science, profession or calling, and by virtue of his or her special skill or knowledge, an expert is permitted to give explanations and to draw inferences not within the range of ordinary knowledge, intelligence and experience and to give an opinion and to state his or her reason for it.

> Both Corporal Goodyear and Corporal Roche did testify as experts in computer forensics in this case by stipulation of the attorneys, and in deciding whether or not to accept their opinions, you should consider the evidence as to their training, education, and experience as well as the reasons and facts on which they base their opinions. Also, in deciding whether or not to accept their opinions, you should bear in mind you are not bound to accept their opinion merely because it is the testimony of someone having a special skill or knowledge.

Id. at 493-44.

There is no question that Corporal Goodyear testified at trial in an expert capacity – explaining, inter alia, how file sharing software works, and how the Pennsylvania State Police identify and track child pornography on file sharing networks. See, e.g., id. at 74-76, 92-93, 140. But Corporal Goodyear also was personally involved in the investigation that led to the discovery of child pornography on Petitioner's laptop computer, as well as identifying the IP address of Petitioner's internet connection, obtaining a search warrant for the residence associated with that IP address, serving the search warrant on that address, and reviewing the content of at least one video on Petitioner's computer. Id. at 115-123.

Here, the basis for Ground 1 is the intermingling of Corporal Goodyear's expert testimony and his fact testimony without explicit instructions delineating between the two, to which Petitioner argues his counsel was ineffective for failing to object. ECF No. 20 at 13. Petitioner identifies at least four instances where Corporal Goodyear swapped between providing expert testimony and fact testimony at trial. Id. at 18-20 (citing Trial Tr. dated Feb. 17-20, 2015, at 80, 92, 100, and 139). Petitioner argues that the circumstances surrounding Corporal Goodyear's testimony left Corporal Goodyear cloaked in an "aura of special reliability" that extended past his expert testimony, resulting in the jury having an unfairly enhanced view of Corporal Goodyear's credibility. ECF No. 24 at 7-8 (citing United States v. Christian, 673 F.3d 702, 712 (7th Cir. 2012)).

24

In support of his claim of ineffective assistance of counsel, Petitioner cites to Pennsylvania case law regarding the proper way to handle a witness who is testifying both as an expert and as a fact witness. Id. at 17 (citing Com v. Huggins, 68 A.3d 966, 962-74 (Pa. Super. Ct. 2012)). In that case, the Pennsylvania Superior Court explicitly held that state rules of evidence do not prohibit a single witness from testifying in both expert and lay capacities "on matters that may embrace the ultimate issues to be decided by the fact-finder." Huggins, 68 A.3d at 967. However, the Superior Court also noted the importance of instituting appropriate safeguards to minimize juror confusion. Id. at 974. In order to determine examples of such safeguards, the Superior Court looked to federal case law from the Seventh Circuit for guidance. Id. at 969-71 (discussing, *inter alia*, Christian, 673 F.3d 702; United States v. York, 572 F.3d 415 (7th Cir. 2009); and United States v. Farmer, 543 F.3d 363, (7th Cir. 2008)). From its analysis, the Superior Court determined that these examples include the trial court diligently gate keeping expert witnesses; providing cautionary instructions throughout trial; requiring the prosecution to delineate between the dual-purpose witness's expert-based and fact-based opinions; and rigorous cross examination. Id. at 974.

In this case, the trial court did not provide explicit instructions explaining that Corporal Goodyear would testify both as an expert and a fact witness, nor did the trial court or the prosecution make efforts to delineate between Corporal Goodyear's fact and lay testimony – either explicitly, or implicitly with contextual language such as asking his expert opinions "based on his experience" that would clarify for a juror the role in which he was testifying. See Farmer, 543 F.3d at 370-71.

However, on the record before this Court, Petitioner cannot establish that his trial counsel failed to provide effective assistance. First, the record does not overcome the presumption that

counsel might have acted according to a sound strategy.  Bell v. Cone, 535 U.S. 685, 698 (2002) ("Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.") (internal quotations omitted).

The record indicates that Petitioner's strategy at trial was not to argue that the laptop did not belong to Petitioner, or that child pornography was not on the laptop.  Instead, counsel's apparent strategy was that the prosecution could not prove that Petitioner was the individual who downloaded and shared the child pornography.  See Trial Tr. dated Feb 17-20, 2015, at 46-51.

In apparent furtherance of this strategy, Petitioner's counsel vigorously and thoroughly cross-examined Corporal Goodyear, forcing him to admit that he lacked evidence that it was Petitioner who downloaded the pornography.  See, id. at 130.  ("Q. I'll ask again.  What evidence do you have that Shane Lafferty was sitting at his computer using it on June 29th at 4:30? A. Other than what I've already testified to, I would say - - Q. None? A. - - I have none.").  Corporal Goodyear also admitted on cross examination the possibility that the file sharing program could have been running in the background of the computer – i.e., without the knowledge of someone who was using the computer at the time.  Id. at 147.

Petitioner's counsel also attempted to undermine the thoroughness of Corporal Goodyear's testimony by eliciting a concession that he had not conducted a thorough forensic examination of the computer.  Id. at 132-33.

Petitioner's counsel further attempted to use whatever of Corporal Goodyear's "aura of special reliability" that existed to establish that Petitioner had maintained his innocence from his first interaction with the police, and that that was not typical for individuals accused of possessing child pornography.  Id. at 124-25.

Undoubtedly, a factual examination of the motivations of Petitioner's trial counsel would be helpful to determine whether trial counsel's failure to object to the trial court's instructions – such as they were – was the result of some defense strategy.  See Martinez, 566 U.S. at 13 ("Ineffective-assistance claims often depend on evidence outside the trial record.").  But, Petitioner is at fault for failing to develop the necessary factual record, and the law is clear that he cannot do so now.  Accordingly, Petitioner has not met his burden to show counsel's deficient performance as to Ground 1.[8]  Bell, 535 U.S. at 698.  Habeas relief will be denied as to Ground 1.

### 2. Ground 2

At Ground 2, Petitioner alleges that his trial counsel was ineffective for failing to object to various pages of Corporal Goodyear's PowerPoint presentation and his testimony, which Petitioner alleges invaded the province of the jury.

> Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was violated when his trial attorney failed to take sufficient steps to prevent the Commonwealth's expert witness, Corporal Goodyear, from unlawfully intruding into the province of the jury both in his testimony and in his power-point presentations.

ECF No. 20 at 29.

Petitioner cites to six instances where Corporal Goodyear allegedly intruded on the province of the jury by insinuating that child pornography was obtained from Petitioner, and to which Petitioner's trial counsel allegedly was ineffective for failing to object.  These instances are as follows.

> i.   A statement on a slide of a PowerPoint presentation created by the Pennsylvania State Police and presented during Corporal Goodyear's testimony, stating in pertinent par that a version of a files haring software used by the Pennsylvania State Police "that was used to obtain files from the defendant."  Id. at 31; ECF No. 20-3 at 26.

---

[8] For the same reasons discussed in more depth in Part IV.B.2, infra, Petitioner also fails to establish prejudice on the closed record.

ii.     Another PowerPoint slide presented during Corporal Goodyear's testimony stating in its entirety "Files downloaded from defendant." ECF No. 20 at 33; ECF No. 20-3 at 32.

iii.    Testimony from Corporal Goodyear describing the contents of a series of pornographic pictures contained on Defendant's laptop:

> As I mentioned with this particular series, as you can see here (indicating) if you started at the top left corner, you have a young girl who is under 18 who's fully clothed, and as the series progresses, I mentioned she takes off more and more of her clothing until she is completely nude. So this is a sampling of the pictures that were found in the various folders that were downloaded from Mr. Lafferty and the names that are associated with them.

> ECF No. 20 at 34 (quoting Trial Tr. dated Feb. 17-20, 2015, at 97).

It is noteworthy that, according to the trial transcript, Petitioner's counsel objected to the characterization of "the files being downloaded from Mr. Lafferty" four lines later. Id. at 97. That objection was sustained. Id. at 98. The prosecution was given leave to lay foundation regarding the presence of the pornography on Petitioner's computer. Id. at 99-100. Much of the conversation relating to the PowerPoint slide after Petitioner's counsel objected was to limit the number of pornographic images that the prosecution would be allowed to show to the jury, id. at 97-100, which Petitioner's counsel had tried to limit multiple times up to that point, and which seems to have been of significant concern due to their potentially prejudicial nature. Id. at 50-53 and 471.

iv.     Corporal Goodyear's statement on cross examination:

> Q. What evidence do you have that Shane Lafferty's hands were on the computer at that time?

> A. Well, I believe that based on the fact that he stated it's his computer, that he's the one who uses it. And the fact that it was seen 22 times within an eight-hour period up to and past midnight, I find it doubtful that somebody else would be using his laptop over an extended period of time without his actually using it himself. So do I believe Shane Lafferty is the one who did this? Absolutely.

ECF No. 29 at 35.  Trial Tr. dated Feb. 17-20, 2015, at 130.

It is noteworthy that the following exchange took place immediately after the above-noted quote.

> Q. I'll ask again.  What evidence do you have that Shane Lafferty was sitting at his computer using it on June 29th at 4:30?
>
> A. Other than what I've already testified to, I would say - -
>
> Q. None?
>
> A. - - I have none.

Id. Petitioner's counsel then continued to undermine Corporal Goodyear's assertion that Petitioner downloaded the child pornography found on his computer by establishing that other individuals had access to the computer, and that Corporal Goodyear could not confirm that Petitioner himself downloaded the files.  Id. at 130-37.  Indeed, establishing that the pornography actually was downloaded by another individual who had access to Petitioner's computer – David Cross – appears to have been central to Petitioner's defense strategy in this case.

> v. Yet another slide from Corporal Goodyear's PowerPoint presentation, stating "When the defendant's computer was examined, it was determined that he was using BitLord version 2.3.2-245 at the time the search warrant was served."  ECF No. 20 at 36; ECF No. 20-3 at 36.
>
> vi. Another PowerPoint presentation slide stating that "BitLord 2.3.2-245 was released on or about 08/27/13. This means that the defendant's BitLord software had AFTER [sic] the time of the original undercover investigation ECF No. 20 at 36; ECF No. 20-3 at 37.

At the outset, as to Corporal Goodyear's testimony at Points iii and iv above, Petitioner has failed to demonstrate deficient performance of trial counsel based on the state court record.  With respect to Point iii, Petitioner's counsel objected to Corporal Goodyear's characterization of "the files being downloaded from Mr. Lafferty" moments after the statement was made, and that objection was sustained.  As to Point iv, trial counsel used it to force a concession that Corporal Goodyear had no evidence that Petitioner was the actual individual downloading child

pornography at the time in question.  In light of trial counsel's apparent strategy to show that multiple people had access to Petitioner's computer, and that David Cross allegedly was the likely culprit, Petitioner has not shown that counsel's handling of this statement was not part of his sound trial strategy.

With respect to the PowerPoint presentation, it is noteworthy that it was one of three such presentations used by the prosecution at trial, and that defense counsel objected to them multiple times on the basis that they had been provided to him only on the morning of trial.  Trial Tr. dated Feb. 17-20, 2015 at 17-21.  See also id. at 56, 177-78, 507-08, and 514.  The trial judge overruled each objection because the "information" on the slides had been provided to counsel during discovery even if it was not formatted as it was presented in the PowerPoint presentations.  See, e.g., id. at 514.  It appears from the context of the trial transcript that the "information" referenced in the argument regarding objections relates to the examples of pornography retrieved from Petitioner's computer, and possibly the technical methods used by the Pennsylvania State Police.[9] It is unclear from the record whether the references to the "defendant" on the slides.

First, it is unclear whether Petitioner's failure to object to the prosecution's reference to "defendant" on these slides was contrary to counsel's sound strategy.  Specifically with respect to Points i and ii, these slides refer to obtaining files *from* a defendant, and Petitioner's apparent strategy at trial was not to contest that child pornography obtained by the State Police from his computer, but that he was not the individual who was responsible for putting it there in the first place.  Id. at 44-49.  See also id. at 50-51. ("We are not challenging - -  Shane is not challenging

---

[9] It also appears that, when Corporal Goodyear was presenting his PowerPoint slides – over defense counsel's objection, and which counsel had received only that day – counsel was focused on limiting the jury's exposure to images of child pornography via the presentation, which he appears to have been afraid could unfairly prejudice Petitioner.  Id. at 15-16, 50-51, 97-99, 103-10, and 471.

whether or not these images are child pornography.  We're willing to offer a stipulation or an agreement that they are, in fact, child pornography.  We are not challenging that element of the case.  Our defense is a sniper shot.  It's that Shane didn't possess it, that it was David Cross that downloaded it.  Yes, it was Shane's laptop.  No, Shane didn't share this.  He didn't download it.  He didn't look at it.  He didn't know it was there.").

Points v and vi appear to explain the difference between the version of the BitLord file sharing software what was being used during the State Police's investigation during June and July of 2013, see id. at 92, 100-01, 118-19; 137-38, and October 29, 2013 - the date on which the search warrant was served.  Id. at 155.  There also is testimony indicating that Petitioner had his laptop at the time that the search warrant was served, id. at 121, and that it was on at the time that the search warrant was served, and that a file sharing program was maximized on the screen and running as Petitioner came out of his bedroom, where the laptop was found.  Id. at 161 and 171.  Petitioner's counsel impeached this testimony by forcing Corporal Roche to admit that that information was "of the utmost importance," but was not included in his police report, or any supplemental report thereafter.  Id. at 203 and 466.

Additionally, consistent with his apparent trial strategy to establish that Petitioner was not the individual who downloaded the child pornography onto his laptop, Petitioner's counsel focused on presenting copious testimony that Petitioner was not responsible for downloading the child pornography that was found on his laptop computer.  This defense strategy included witness testimony that a password was not necessary to access the laptop and files sharing program, id. at 135, 272, 302, and 383, and that multiple people in the house routinely used Petitioner's laptop. Id. at 271, 273, 294, 302, 327, 354, 372-73, and 383.

Moreover, Petitioner's counsel elicited testimony that at least one other individual was using the computer on the date on which child pornography allegedly was shared. Id. at 317-18. Trial counsel also forced Corporal Goodyear to concede that the BitLord file sharing software could be run in the background of Petitioner's computer, and thus possibly without Petitioner' knowledge. Id. at 147.

In addition to this, trial counsel also presented a theory that David Cross was the individual who downloaded the pornography, and witnesses testified to that effect. See, e.g., id. at 264-278; 294-95. Witness testimony also indicated that David Cross had access to Petitioner's laptop, id. at 270-71, 274-75, 294-95, 336, 338, and 396, as well as an alleged interest in child pornography, id. at 334-325, 374-76, 400, and 403, and had engaged in suspicious behavior – such as insisting on extreme privacy, id. at 288, 338, 352, and 377, and destroying or attempting to destroy at least one computer in the past, id. at 267, 343, and 376-77. Testimony also was presented that Amy Cross – David Cross' sister and Petitioner's former girlfriend – accused David Cross of being responsible for downloading the child pornography on the date that the search warrant was served. Id. at 135 and 206.

Based on the closed state court record, it does not appear that Petitioner can establish that his trial counsel's performance was deficient with respect to the above PowerPoint slides and challenging the testimony by Corporal Goodyear. That said, even if Petitioner could establish that trial counsel's performance was deficient for failing to raise additional objections to the content to any of the PowerPoint slides referenced above, Petitioner has failed to establish prejudice for not doing so.

There is no evidence that the jury paid undue attention to the PowerPoint slides at issue. Indeed, as the Superior Court already found with respect to another incident wherein Corporal

Goodyear interacted with the jury during deliberations, there was no evidence that jury paid special attention to Corporal Goodyear. Instead, the Superior Court concluded Petitioner's acquittal on three of the five charges against him supports a contrary conclusion. Lafferty, 2019 WL 4862186, at *4. Petitioner adduces no evidence that the Superior Court's conclusion was incorrect.

Further, as Petitioner rightly concedes, the most damaging evidence against him at trial was presented by Corporal Roche, and not Corporal Goodyear. ECF No. 24 at 22-23. Corporal Roche testified to finding Petitioner's laptop computer open in his room, with a file sharing program running, while Petitioner was leaving his room as the search warrant was being served. Trial Tr. dated Feb. 17-20, 2015, at 161 and 170-71. Corporal Roche also testified as to the existence of the "Shane's Food Stamp" file, and that it was created at the time that a computer using Petitioner's IP address was offering to share child pornography. Id. at 184-87.

Additionally, in his post-trial motions, Petitioner's counsel argued that the jurors made statements in chambers – presumably after the verdict was rendered – that they believed that Petitioner did not download the child pornography that was on his computer, but that Petitioner was responsible because he let David Cross access his computer knowing that he was "into it."[10] ECF No. 15-1 at 48-50. Thus, the limited content in the state court record, that is on point, indicates that any characterization by Corporal Goodyear indicating that Petitioner had downloaded the child pornography himself might not have been persuasive to the jury.

None of this, of course, is a substitute for a factual hearing on Ground 2. But Petitioner is at fault for not developing the factual basis for this claim in the state court, and no exception under Section 2254(e)(2) appears to apply. Accordingly, this Court is limited to the closed state court record. As such, and even under de novo review, Petitioner has failed to show prejudice with

---

[10] This is not asserted as a basis for relief in the Amended Petition.

respect to trial counsel's performance.  Accordingly, he cannot satisfy the Strickland standard, and federal habeas relief under Ground 2 will be denied.

### 3. Ground 3

At Ground 3, Petitioner asserts:

> Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was violated because of the Cumulative Effect of the Attorney Errors in this Trial.

ECF No. 20 at 45.  In this claim, Petitioner essentially asks this Court to combine each asserted basis under Grounds 1 and 2 for a prejudice analysis.  Id. at 46.

As with Grounds 1 and 2, Petitioner concedes that this ground is procedurally defaulted. Id. at 47.  Similarly, Petitioner asserts that his default can be set aside under Martinez.  Id.

The United States Court of Appeals for the Third Circuit has explained the concept of cumulative error.

> Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

Collins v. Sec'y of Pa. Dept. of Corrs., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008) (internal quotation marks omitted) (citations omitted)).  This is a standalone, due process claim.  Id.  As such, is unclear in this Circuit whether Martinez can save a defaulted cumulative error claim even when each asserted error sounds in ineffective assistance of counsel.  See Moore v. Wakefield, No. CV 19-576, 2021 WL 7711234, at *24 (E.D. Pa. Mar.

30, 2021), report and recommendation adopted, 2022 WL 911144 (E.D. Pa. Mar. 29, 2022) (citing cases).

Presuming, without deciding, that Martinez does apply to Petitioner's Ground 3, this claim requires the Court to aggregate the prejudice caused by all the instances of error or counsel's deficient performance. See Smith v. Fisher, No. 14-2935, 2016 WL 4366974, at *11 (E.D. Pa. Aug. 15, 2016) ("In the absence of any deficient performance on the part of Petitioner's counsel ..., such claims give rise to no constitutional prejudice that can be bundled on cumulative review."); Pursell v. Horn, 187 F. Supp. 2d 260, 363 (W.D. Pa. 2002) (Smith, C.J.) (cumulative review is proper under Strickland only after the petitioner's claims surmount the first prong of the Strickland analysis).

Here, for the reasons set forth above, Petitioner cannot establish deficient performance of trial counsel on the closed state court record, and the law precludes this Court from expanding that record. The same is true as to any prejudice arising from Grounds 1 and 2, to the extent that prejudice was analyzed. For the reasons stated above, the closed state court record does not support a finding of prejudice, even when each instance of alleged deficient performance is analyzed in the aggregate. Accordingly, federal habeas relief as to Ground 3 will be denied.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability will be denied, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). See also Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

## VI. CONCLUSION

For the reasons set forth herein, the Amended Petition, ECF No. 20, will be denied.  A certificate of appealability also will be denied.

An appropriate Order follows.

Dated: April ___/___, 2024                    BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    all counsel of record (*via* CM/ECF)